90                                428 Mass. 90 (1998)

Doe, Sex Offender Registry Board No. 972 *v.* Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 972 *vs.* SEX OFFENDER REGISTRY BOARD (and a companion case[1]).

Middlesex. February 2, 1998. - July 24, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Burden of proof, Privacy. *Due Process of Law,* Sex offender, Hearing, Burden of proof. *Criminal Offender Record Information. Administrative Law,* Adjudicatory proceeding. *Privacy.*

This court concluded that the appropriate forum for the required evidentiary hearing concerning a sex offender's reoffense classification under G. L. c. 6, § 178M, is before the Sex Offender Registry Board established by G. L. c. 6, § 178K [98-100], at which the board must prove the risk of reoffense by a preponderance of the evidence, making particularized, specific, and detailed written findings to support its determination [100-104]; further review may then be had in the Superior Court in accordance with the standard set forth in G. L. c. 6, § 178M. MARSHALL, J., dissenting in part, was of the opinion that due process requires that proof of the risk level classification be by clear and convincing evidence [104].

CIVIL ACTIONS commenced in the Superior Court Department on January 31, 1997, and February 4, 1997, respectively.

Questions of law were reported to the Appeals Court by *Margot Botsford,* J., and *Lawrence B. Wernick,* J., where the appeals were consolidated. The Supreme Judicial Court granted a request for direct review.

*Peter Sacks,* Assistant Attorney General, for the defendant.

*Carol A. Donovan,* Committee for Public Counsel Services, & *Carol A. Fitzsimmons (Marshall E. Johnson* with them) for the plaintiffs.

IRELAND, J. These consolidated cases concern the process for classifying sex offenders under the sex offender registration and community notification act (act), G. L. c. 6, §§ 178C-178O. Two Superior Court judges ruled that those individuals classified as level three offenders have constitutionally protected

[1]John Doe, Sex Offender Registry Board No. 529 *vs.* Sex Offender Registry Board.

liberty and privacy interests sufficient to require evidentiary hearings before a final classification and before they may be required to register and their registration information may be disseminated to the public. They also ruled that the sex offender registry board (board) has the burden of proving that any risk classification is appropriate by a preponderance of the evidence, and that § 178M unconstitutionally placed the burden of proof on offenders. One judge ruled that § 178M was unconstitutional in its entirety, and the other ruled that only the sixth sentence of that section, concerning the standard of judicial review, was unconstitutional. At the board's request, each judge reported the correctness of his or her rulings pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). The Appeals Court allowed the motion to consolidate the two appeals. We granted the board's application for direct appellate review on November 12, 1997.

The questions we are asked to answer are (1) in order to satisfy due process requirements, should an offender's constitutionally required evidentiary hearing be held in the Superior Court or before the board pursuant to G. L. c. 30A; and (2) whether proof of the appropriateness of the board's classification by a preponderance of the evidence satisfies constitutional due process.

For the reasons stated below, we conclude that the statute can be construed to satisfy constitutional due process, that the evidentiary hearing should be held before the board pursuant to G. L. c. 30A, that the appropriateness of an offender's risk classification must be proved by a preponderance of the evidence, and that the board must make specific, written, detailed, and individualized findings to support the appropriateness of each offender's risk classification. Offenders may appeal to the Superior Court for review of the board's decision under the standards stated in § 178M.

I. *The statutory scheme.* General Laws c. 6, §§ 178C-178O, became effective on October 1, 1996. See St. 1996, c. 239, § 4. The Legislature adopted the act "to protect the public from the 'danger of recidivism posed by sex offenders' and to aid law enforcement officials in the apprehension of sex offenders by providing them with 'additional information critical to preventing sexual victimization and to resolving incidents involving

sexual abuse and exploitation.' "[2] *Opinion of the Justices*, 423
Mass. 1201, 1204 (1996). See *Doe* v. *Attorney Gen.*, 426 Mass.
136, 139 (1997). It requires all sex offenders, as defined in
G. L. c. 6, § 178C,[3] to register in person with the police depart-
ment in the city or town where they reside. The police depart-
ment must send the registration information to the criminal his-
tory systems board (CHSB). The CHSB maintains a central
computerized registry containing updated files on each sex of-
fender.[4] § 178D. The CHSB is then required to transmit the
information to the police departments in the cities or towns
where the sex offender works and where the offense was com-
mitted, as well as to the Federal Bureau of Investigation (FBI).
§ 178E. Section 178K of the act established the board, which
consists of five members appointed by the Governor: the
Secretary of the Executive Office of Public Safety or his
designee; two licensed psychologists or psychiatrists with
special expertise in the assessment and evaluation of sex of-
fenders and knowledge of the forensic mental health system,
one of whom has expertise with juvenile sex offenders; one
person with at least five years of training and experience in
probation, parole or corrections; and one person with expertise
or experience with victims of sexual abuse.

The general charge of the board is to:

---

[2] This language refers to the bill considered by the Justices in *Opinion of the
Justices*, 423 Mass. 1201, 1204 (1996). Although the language was removed
from the act before it was adopted, it is useful for understanding the
Legislature's purpose for adopting the act. Other jurisdictions have adopted
analogous statutes for similar reasons. See, e.g., Note, Megan's Law and its
Progeny: Whom Will the Courts Protect?, 39 B.C. L. Rev. 201, 202 (1997)
(Congress adopted Federal Violent Crime Control and Law Enforcement Act
of 1994 to protect public from violent sex offenders); *Doe* v. *Poritz*, 142 N.J.
1, 12-15 (1995) (New Jersey Legislature adopted sex offender registration and
community notification statute to protect public from recidivistic sex offend-
ers).

[3] "Sex offender" is defined in G. L. c. 6, § 178C, as "a person convicted of
a sex offense or who has been adjudicated as a youthful offender or as a
delinquent juvenile by reason of a sex offense or a person released from
incarceration or parole or probation supervision for such a conviction or
adjudication, whichever last occurs, on or after August first, nineteen hundred
and eighty-one."

[4] The files contain personal information about each sex offender, including
the home address, work address, physical characteristics, a photograph and
fingerprints, a description of the sex offenses, and any information useful in
assessing the risk of reoffense or identifying the registrant. G. L. c. 6, § 178D.

"promulgate guidelines for determining the level of risk of reoffense of sex offenders, apply the guidelines to assess the risk level of particular offenders, develop guidelines for use by city and town police departments in disseminating sex offender registry information, and make recommendations to the superior court regarding risk levels and community notification plans in the cases where the offender has a right to judicial review and has requested a hearing as provided in section [178L[5]]."

G. L. c. 6, § 178K. Section 178K (1) (a)-(l) lists noninclusive factors said to be relevant to the risk of reoffense, including whether the offender committed a sex offense involving a child; whether the offender used a weapon; the offender's criminal history; conditions of release that minimize risk of reoffense; physical conditions that minimize risk of reoffense; whether the offender was a juvenile when he committed the offense; his response to treatment and subsequent criminal history; psychological or psychiatric profiles; history of alcohol or substance abuse; participation in treatment and counseling and response thereto; recent behavior, recent threats, or expressions of intent to commit additional offenses; review of any impact statement; and any materials submitted by the sex offender, his attorney, or others on his behalf.

Section 178K (2) states that the guidelines promulgated by the board "shall provide for three levels of notification depending on the degree of risk of reoffense by the sex offender." A level one designation shall be given to offenders if their risk of reoffense is low. For level one offenders, the CHSB is required to transmit the offender's registration information to the police departments where the offender resides and works and where the offense was committed, as well as to the FBI. A level two designation shall be given to an offender if the risk of reoffense is moderate. In addition to the notification requirements of level one offenders, police departments are required to provide the registration information to "organizations in the community which are likely to encounter the offender including, but not limited to, schools, day care centers, religious and youth organizations, and sports leagues." G. L. c. 6, § 178K (2) (b). Finally, a level three designation shall be given to an offender if

---

[5]Notwithstanding the reference to § 178L, this section does not currently exist in the General Laws. The reference probably is intended to be to § 178M.

the risk of reoffense is high. In addition to the notification requirements for level one and level two offenders, the police departments are required to notify "individual members of the public which are likely to encounter the [level three] offender." G. L. c. 6, § 178K (2) (c).

Pursuant to § 178K, the board promulgated guidelines for classification of sex offenders (guidelines). To determine a sex offender's risk of reoffense, the board considers numerous factors as well as victim impact statements and any other materials submitted by the sex offender. Each factor is given a rating (i.e., low, moderate, high), and the risk level is assessed based on the category of risk with the highest number of ratings. 803 Code Mass. Regs. § 1.02(2) (1996). This risk level can be adjusted based on other materials. The guidelines also contain five "override" factors, which, where present, require a finding that the offender poses a high risk of reoffense and should be classified as a level three offender. See 803 Code Mass. Regs. § 1.02(5) (1996). A determination, based on an override factor, that an offender poses a high risk of reoffense, must stand "absent a finding of compelling justification to take other action." *Id.* The override factors are:

> "[1.] The offender has a mental health disorder which includes a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases his/her ability to control impulsive sexual behavior. . . .

> "[2.] The offender has been adjudicated and/or convicted of multiple instances of sexual abuse/assault and/or the offender has been convicted of one or more crimes, sexual in nature, against a child and/or a mentally retarded person. . . .

> "[3.] The offender has used some threats of violence in the commission of any of their [*sic*] offense(s), which included the use of a weapon, and/or causing bodily harm, and/or participation in a gang type sexual assault. . . .

> "[4.] Offenders who are determined to be a moderate risk to re-offend as a result of this assessment and currently participate in a sex specific treatment program with unsatisfactory progress; or, has no participation in a sex

offender specific treatment program; and/or participated in a sex offender specific treatment program in the past but is not currently involved in such a program. . . .

"[5.] The offender has recent threats against a person and/or expressions of intent to commit additional sexual offenses."

803 Code Mass. Regs. § 1.02(5).

Section 178M provides for judicial review of the board's risk designation as follows:

"An offender who has been given a level two or level three designation may petition the superior court where the offender resides or intends to reside to challenge his risk designation. Such offender may request an opportunity to appear and be heard. At such hearing, the rules of evidence shall not apply and the court may review any materials described in the guidelines. The court shall, if requested, appoint counsel to represent the sex offender in the proceedings if the offender is deemed indigent in accordance with section two of chapter two hundred and eleven D. An attorney employed by the board may make an appearance to defend the risk designation given by the sex offender registry board and to represent the public interest. The court may modify the risk designation given by the sex offender registry board only if such designation is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. The court shall reach its final decision within sixty days of the offender's petition for review. The court shall keep proceedings conducted pursuant to this paragraph and records from such proceedings confidential."

G. L. c. 6, § 178M.

II. *Procedural and factual background.* In 1987, John Doe no. 972 was convicted of rape of a child, G. L. c. 265, § 23, and indecent assault and battery of a child under the age of fourteen, G. L. c. 265, § 13B, both of which are "sex offenses" defined in G. L. c. 6, § 178C. The victim was his twelve year old step-daughter. John Doe no. 529 was convicted of the same offenses in 1985. In his case, the victim was his young daughter. Accordingly, they registered as sex offenders.

Doe no. 972 submitted numerous materials to the board for its consideration in classifying him. The materials included two separate psychological evaluations and testing reports by a licensed psychologist who had served as Doe no. 972's therapist from 1991 to 1993 — the reports contain no information suggesting a risk of reoffense; a letter from his parole officer stating that he had met all conditions of parole, including mandatory mental health counseling and no contact with the victim, and offering the officer's opinion that he was of little or no risk to reoffend; a letter from his employer indicating that the employer is aware of his offense.

Doe no. 529 also submitted materials for the board's consideration, including fifteen letters from acquaintances and community members in support of designating him a low risk offender — including letters from parents whose children had played with the offender's child, a letter from a nurse with experience in treating victims of child molestation, a former town council president, a clinical social worker who counseled the offender while he was on probation, and a retired deputy United States marshal.[6]

The board considered the materials submitted by both Doe no. 972 and Doe no. 529, as well as other materials obtained from governmental sources, including records kept by the Commissioner of Probation, Department of Correction, and the FBI. The board classified both as level three offenders, even though both of their risk assessment guideline forms suggested that without any overrides, they would have been classified as level one offenders.[7] The offenders were notified of the board's decisions, and each sought judicial review of his classification. Community notification has been stayed during the appeals.

The board filed motions in limine seeking rulings in each proceeding that (1) no evidentiary hearing was available under

---

[6]This information is in the record appendix and is not recited in the judge's findings.

[7]The overrides applied to Doe no. 972 included: he had been convicted of one or more sexual crimes against a child (see 803 Code Mass. Regs. § 1.02 [5][b]), and he was not currently participating in a specific sex offender treatment program (see § 1.02[5][d]).

The overrides applied to Doe no. 529 were: he had been convicted of one or more crimes, sexual in nature, against a child (see § 1.02[5][b]), and he had not participated in a sex offender specific treatment program in the past or had participated in a sex offender specific treatment program but was not currently involved in such a program (see § 1.02[5][d]).

§ 178M, so that the court's review was confined to the record developed before the board; and (2) the proper standard of review was as stated in § 178M: "The court may modify the risk designation given by the ... . board only if such designation is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."

In Doe no. 972, a Superior Court judge denied the board's motion in limine and ruled that an evidentiary hearing concerning the appropriateness of the board's reoffense classification would be held in the Superior Court, and that the burden would be on the board to prove by a preponderance of the evidence that the reoffense classification was appropriate. In addition, the judge ruled that the sixth sentence of § 178M, which limited the court's review to whether the board's decision was arbitrary and capricious, placed the burden of proof on Doe no. 972 and was therefore invalid on procedural due process grounds.

In Doe no. 529, another Superior Court judge denied the board's motion in limine, and found all of § 178M invalid on procedural due process grounds. He further invalidated substantial portions of § 178K, the section governing board classifications. In addition, the judge ruled that the board had the burden to prove the appropriate level of classification by a preponderance of the evidence.

We concluded in *Doe v. Attorney Gen.*, 426 Mass. 136, 143 (1997), that those classified as level one offenders have "sufficient liberty and privacy interests constitutionally protected by art. 12 [of the Massachusetts Declaration of Rights] that [they are] entitled to procedural due process before [being] required to register and before information may properly be publicly disclosed about [them]." We further concluded that offenders are entitled to a hearing and a determination as to whether they must register under the act, and, if so, whether their registration information should be available to the public on request. *Id.* at 146.[8] Consequently, the board has now conceded that the offenders in these cases, who were classified as level three offenders, were entitled to evidentiary hearings on the board's classifications. The board argues that it should hold the eviden-

---

[8] Whether a hearing is required as a condition of registration for those convicted of any, or only some, of the listed offenses is not a question that has been resolved by this court. As this question is not raised by this case and has not been considered by the parties in this court, we do not intimate any view on it now.

tiary hearing pursuant to G. L. c. 30A, and that the Superior Court should not hold an evidentiary hearing. The board acknowledges that it has the burden of proving the appropriateness of its classification, and agrees with the judges' rulings that it must do so by a preponderance of the evidence.

The offenders argue that, because the Legislature did not anticipate the need for evidentiary hearings and failed to provide constitutionally sufficient procedures, the statute is constitutionally defective. They claim that the court should not apply procedures to remedy the defects, because it is unclear what the Legislature would have intended. Thus, they argue that §§ 178M and 178K, the provisions relating to classification and judicial review, should be held unconstitutional. They further argue that the entire act is defective and must be struck down as unconstitutional, because it is unclear how the Legislature would remedy the constitutional defects of the statute. If it is constitutionally appropriate to hold a hearing, the offenders argue that, in any evidentiary hearing, the board must prove the appropriateness of its classification by clear and convincing evidence.

III. *Procedural due process.* The parties agree that due process entitles any offender to an evidentiary hearing on the appropriateness of his or her risk classification. Although the statute does not provide for an evidentiary hearing, it is appropriate for us to prescribe such a process in part, in order to carry out the legislative intent that there be a risk classification procedure and that judicial review be available for any offender who challenges the board's classification. Striking the entire classification process, as the offenders urge us to do, would not satisfy the over-all goal of the act. This leads us to the question of what the appropriate forum for the evidentiary hearing is.

The hearing should be held before the board. Section 178M places the decision-making function in the board and limits the role of a Superior Court judge to review of a decision of the board under a restricted standard.[9] An evidentiary hearing before the board more closely adheres to the statutory intent than would a de novo hearing in the Superior Court. Once we conclude that, by constitutional right, a person is entitled to an

---

[9]General Laws c. 6, § 178M, is inconsistent with holding individualized evidentiary hearings in the Superior Court, because that section limits the court's review of the board's decision to "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."

agency hearing, the hearing becomes an adjudicatory one under the State Administrative Procedure Act (G. L. c. 30A). An "[a]d-judicatory proceeding" is one "in which the legal rights, duties or privileges of specifically named persons are required by *constitutional right or by any provision of the General Laws* to be determined after opportunity for an agency hearing" (emphasis added). G. L. c. 30A, § 1 (1).

On several occasions we have directed agencies to hold adjudicatory hearings when constitutionally required, even though the agency's enabling statute did not expressly state that it was to conduct such a hearing. See *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 717-720, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983); *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 494-500 (1965). See also *Commonwealth* v. *Gordon*, 354 Mass. 722, 727 (1968) (hearing available under c. 30A if constitutionally required, even though statute did not so provide). Cf. *Wong Yang Sung* v. *McGrath*, 339 U.S. 33, 48-51 (1950) (Federal Administrative Procedure Act applies to agency proceedings when hearing required by Federal Constitution even though statute did not provide for hearing). Our conclusion that the evidentiary hearings should be held before the board is consistent with cases that state that agencies have implicit authority to implement generally acceptable procedural practices to "fill in necessary and appropriate procedural elements [of a statute] unless circumstances indicate a contrary legislative intent." *Frizado* v. *Frizado*, 420 Mass. 592, 597 (1995). See *Boston Neighborhood Taxi Ass'n* v. *Department of Pub. Utils.*, 410 Mass. 686, 692 (1991) ("an agency is deemed to have not only those powers expressly conferred by statute, but also those reasonably necessary to carry out its mission"); *Commonwealth* v. *Cerveny*, 373 Mass. 345, 354 (1977) ("[a]n agency's powers are shaped by its organic statute taken as a whole and need not necessarily be traced to specific words").

The offenders argue that the Legislature could not have intended that hearings be held before the board. They point out that the statute does not provide that indigent offenders would be entitled to counsel at an evidentiary hearing before the board, but would be in any appeal to the Superior Court. See G. L. c. 6, § 178M (indigent offenders appointed counsel only after offender claims a judicial review of the board's risk classifica-

tion).[10] They also claim that there are no lawyers or other persons trained in holding adjudicatory proceedings on the board. The offenders express concern about potential conflicts of interest were the board members to serve as adjudicators at evidentiary hearings, because the same agency would both prosecute and adjudicate the risk classification claim. However, these issues do not distinguish this statute from many others.[11] The board will have to consider these issues when establishing its internal procedures, because those procedures must comply with constitutional due process in all respects. The offenders' arguments do not persuade us to place the evidentiary hearing in the Superior Court.

IV. *The board's burden of proof.* We next address the appropriate burden of proof the board must satisfy to show that it has properly classified an offender. To determine what standard of proof is required to satisfy constitutional due process, we balance the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved. See *Mathews* v. *Eldridge,* 424 U.S. 319, 335 (1976); *Spence* v. *Gormley,* 387 Mass. 258, 274-275 (1982). "Deprivation of greater individual liberty interests requires greater procedures and stronger countervailing State interests." *Doe* v. *Attorney Gen.,* 426 Mass. 136, 140 (1997), citing *Mathews* v. *Eldridge, supra* at 334-335; *Opinion of the Justices, supra* at 1231.

A. *The private interest.* Sex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information. See *Doe* v. *Attorney Gen., supra* at 143. The sex offenders in these cases

[10]Because the statute does not provide for an evidentiary hearing before the board, the Legislature may have seen little need to provide that indigent offenders are entitled to counsel. Section 178M provides for a hearing to review the board's decision, and, in such proceedings, requires the court to "appoint counsel to represent the sex offender . . . if the offender is deemed indigent." We have not been asked to, and do not address whether counsel must be provided for indigent offenders appearing before the board.

[11]Most statutes do not contain explicit language entitling a party to counsel at administrative proceedings, nor do they require the presence of lawyers or specially trained persons on the board. See, e.g., G. L. c. 27, § 4 (parole board); G. L. c. 13, § 10 (board of registration in medicine); G. L. c. 6, § 43 (alcoholic beverages control commission); G. L. c. 6, § 56 (Massachusetts commission against discrimination). With respect to the offenders' concern about impartiality, the board will have to develop internal procedures which provide offenders with fair and impartial hearings.

were convicted of more than one sex offense, and they must accordingly register with the police departments in the city or town where they reside, and continue to do so for life. Furthermore, because the offenders in these cases were classified as level three, the appropriate police department must actively disseminate to the public the information which they obtain from the offenders themselves — some of which information may be unavailable from other sources.[12] Registration represents a "continuing, intrusive, and humiliating regulation of the person himself." *Doe* v. *Attorney Gen.*, *supra* at 149 (Fried, J., concurring). These circumstances combine to create the constitutionally protected interest here. See *Doe*, *supra* at 144.

Generally, the standard applied in civil cases is proof by a preponderance of the evidence. See *Medical Malpractice Joint Underwriting Ass'n of Mass.* v. *Commissioner of Ins.*, 395 Mass. 43, 46 (1985); *Craven* v. *State Ethics Comm'n*, 390 Mass. 191, 200 (1983); *Guardianship of Roe*, 383 Mass. 415, 422 (1981); 9 J. Wigmore, Evidence § 2498 (3d ed. 1940). We have required a very high standard of proof in cases where a person "receives a stigma at least as great as that flowing from a criminal conviction, and . . . faces a potential loss of liberty." *Guardianship of Roe*, *supra* at 423, citing *Andrews, petitioner*, 368 Mass. 468, 489 (1975) (beyond reasonable doubt standard applied to possible commitment as sexually dangerous person); *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 275-277 (1978) (proof beyond reasonable doubt required to commit individual to mental health facility). In some civil cases where liberty interests are at stake but where the individual's interests are "pitted directly against the State and the interests of no third person [is] directly implicated," *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 699 (1984), we have required a standard of proof that is lower than reasonable doubt, but is heightened to a standard of

[12]We do not address here the question whether the Commonwealth's dissemination of otherwise publicly available information regarding offenders may violate the offenders' constitutional privacy interests. Constitutional privacy interests are implicated in these cases because the information to be disseminated would be obtained from the offenders themselves and by reason of their required acts of registration. The damage to their reputations resulting from such dissemination stigmatizes them as currently dangerous sex offenders, can harm their earning capacities, and can cause them to be objects of derision in the community.

clear and convincing evidence. *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984); *Petition of Dep't of Social Servs., supra* at 700. See *Santosky* v. *Kramer*, 455 U.S. 745, 769-770 (1982). In some cases, we have refused to require any heightened standard of proof even if the State might seriously impinge on personal rights. See, e.g., *Guardianship of Roe, supra* at 425 (no heightened standard of proof in guardianship proceedings involving mentally ill). In such cases we have provided an extra measure of protection by requiring the fact finder to enter specific and detailed findings to demonstrate that close attention has been given to the evidence and that the result for the particular person is appropriate in each case. See *id.*

The offenders in these cases do not face a potential loss of liberty, nor is the stigma of being required to register as a sex offender and of having information regarding sex offenses disseminated to the public, sufficient to require a higher standard of proof than that generally required in civil proceedings. However, the fact finder must make particularized, specific, and detailed findings, guided by the factors set forth in § 178K, to demonstrate that close attention has been given to the evidence as to each offender and that the classification for each is appropriate. See *Guardianship of Roe, supra* at 425; *Custody of a Minor (No. 1)*, 377 Mass. 876, 884 (1979).

B. *The risk of error and the value of other safeguards.* Next, we consider the risk of an erroneous overclassification resulting from use of a preponderance of the evidence standard, and the probable value of additional or substitute safeguards. *Mathews* v. *Eldridge, supra* at 335.

The risk of error in these cases is that the board will apply general factors to the offenders that may not correctly predict their propensity to reoffend. However, that risk is minimized because both parties will have the opportunity at the evidentiary hearing to present evidence, to examine and cross-examine witnesses and to otherwise engage in the processes of an adjudicatory hearing. The board must make explicit findings in determining the proper weight each factor should receive in the classification process for each offender. In addition, the offender may appeal the board's decision to the Superior Court pursuant to § 178M. Therefore, there is no unusual risk of error here.

It is true that the risk of erroneous overclassification could be reduced further by requiring the board to prove the appropriateness of its classification by clear and convincing evidence.

However, this could result in erroneous underclassifications. An erroneous underclassification could mean that the public would not be adequately informed about the presence of an offender in the community who poses a threat of committing a sexual offense. This would frustrate the purpose of the act because the public would have a reduced opportunity to protect those vulnerable to sexual offenders.

C. *The State's interest.* Finally, we consider the State's interest in regulating sex offenders, and the burdens that a heightened standard of proof would create for the State. See *Mathews* v. *Eldridge, supra* at 335. The State's interest here is to protect children and other vulnerable people from recidivistic sex offenders.[13] The preponderance of the evidence standard furthers the State's interest by ensuring that the community is aware, in varying degrees, of those sex offenders who may be likely to reoffend. This will allow the public to take measures to reduce the opportunities for recidivistic sex offenders and avoid becoming victims. In addition, law enforcement officials will be better able to prevent and resolve incidents involving sexual abuse.

A heightened standard of proof would be inconsistent with promoting the State's interest. More sex offenders would be underclassified, preventing the public from protecting themselves from many of those who are likely to reoffend. Therefore, the preponderance of evidence standard appears to be most consistent with advancing the State's interest.

In balancing the interests involved, we conclude that a preponderance of the evidence standard, combined with a requirement that the fact finder make detailed findings to demonstrate that close attention has been given to the evidence and that the appropriateness of the classification has been

---

[13]More generally, the State has a compelling interest in protecting the public from future crimes. See *Kansas* v. *Hendricks*, 521 U.S 346, 351, 357 (1997) (State's interest in protecting public from sexual predators outweighs individual's right to be free from physical restraint); *United States* v. *Salerno*, 481 U.S. 739, 749 (1987) (governmental interest "in preventing crime by arrestees is both legitimate and compelling"); *Addington* v. *Texas*, 441 U.S. 418, 426 (1979) (State's interest in detaining unstable persons who present a danger to the public prior to trial outweighs individual right to be free from physical restraint); *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 225 (1993) (State has compelling interest in protecting public from youths determined to be dangerous and uncontrollable); *Andrews, petitioner*, 368 Mass. 468, 489-490 (1975) (State's interest in protecting public from sexually dangerous persons outweighs individual's right to be free from physical restraint).

shown, satisfies due process under the State and Federal Constitutions.[14]

V. *Conclusion.* We vacate the reported rulings and direct the entry of judgments vacating the board classifications and remanding the matters to the board for classification hearings. At any hearing, the burden will be on the board to show the risk of reoffense by a preponderance of the evidence, and the board must make specific findings of fact as to each individual offender to support its classification.

*So ordered.*

MARSHALL, J. (concurring in part and dissenting in part). The court today takes a first step in filling in the gaps in a statute that we have said falls short of providing registrants under the act a constitutional minimum of due process. See *Doe* v. *Attorney Gen.*, 426 Mass. 136, 137 (1997). I emphasize that the court takes but one step, because significant, undecided issues of constitutional due process were not raised by the parties and therefore are not addressed by the court. I agree that the classification hearing may take place before the board and that it is appropriate to wait until the board establishes its own adjudicatory procedures before we consider the constitutional adequacies of other procedures afforded to potential registrants. I conclude, however, that due process requires that proof be by clear and convincing evidence to establish the risk level classifications. That standard would enable police and the community to focus on those offenders who may pose an actual threat to young children and others that the statute seeks to protect.

We have recognized that the Massachusetts statute is broad, far more so than cognate statutes in neighboring States. See *Doe* v. *Attorney Gen.*, *supra* at 145 (contrasting breadth of Massachusetts statute with New York's version of "Megan's Law");

---

[14]The offenders cite to *E.B.* v. *Verniero*, 119 F.3d 1077, 1111 (3d Cir. 1997), cert. denied sub nom. *W.P.* v. *Verniero*, 118 S. Ct. 1039 (1998), to support their argument that the board should be required to prove its case by clear and convincing evidence. The court concluded that the possible injury to sex offenders from being erroneously overclassified was significantly greater than any harm to the State from an erroneous underclassification. We believe that the harms of erroneous classification are more nearly equal.

*id.* at 146-147, 150 (Fried, J., concurring) (noting that "omnibus, catch-all nature of some of the offenses" in Massachusetts statute are "at a far remove" from showing requisite severity of harm and likelihood of recurrence to justify registration). Because the definition of "sex offender" sweeps in persons whose crimes may have nothing to do with victimizing anyone, much less the vulnerable populations with which the statute is concerned,[1] careful and individualized due process is necessary to sort sexual predators likely to repeat their crimes from large numbers of offenders who pose no danger to the public, but who are nonetheless caught in the statute's far-flung net of registration. Notwithstanding the more narrow scope of sex offenses covered by, as well as the more elaborate statutory procedures in, the versions of "Megan's Law" enacted in New York and in New Jersey, compared to the Massachusetts statute, courts examining those statutes have required that the State prove the facts supporting the recommended classifications by clear and convincing evidence. See *Doe* v. *Pataki*, 3 F. Supp. 2d 456, 471-472 (S.D.N.Y. 1998) ; *E.B.* v. *Verniero*, 119 F.3d 1077, 1110-1111 (3d Cir. 1997), cert. denied sub nom. *W.P.* v. *Verniero*, 118 S. Ct. 1039 (1998). See also State *vs.* Gropp, Ohio Ct. App. No. 97CA006744 (April 8, 1998) (slip op. at 17) (State bears burden of proof by clear and convincing evidence as required by Ohio version of "Megan's Law").

Unlike those courts, this court concludes that a mere preponderance of the evidence standard of proof is sufficient. Because the registrant does not face a loss of physical liberty, but only "the stigma of being required to register as a sex offender and of having information regarding sex offenses disseminated to the public," the court concludes that no "higher standard of proof than that generally required in civil proceedings" is sufficient. *Ante* at 102. This conclusion misconceives both the private and the State interest.

In describing the private interest of the registrant, the court quotes from the concurrence in our most recent case to review the statute. There it was noted that registration (for a minimum of twenty years and in many cases for life) is a "continuing,

---

[1]In *Doe* v. *Attorney Gen.*, 426 Mass. 136, 138 (1997), the registrant was a former marine, now married with two grown children, whose sexual interests are exclusively oriented to other consenting adults, and who was caught in two "sting" operations against homosexual adults.

intrusive, and humiliating regulation of the person himself."
*Ante* at 101, quoting *Doe* v. *Attorney Gen.*, *supra* at 149 (Fried,
J., concurring). The passage in that opinion continues by noting
that, "[t]o require registration of persons not in connection with
any particular activity asserts a relationship between govern-
ment and the individual that is in principle quite alien to our
traditions, a relationship which when generalized has been the
hallmark of totalitarian government." *Id*. at 149-150. Such a
relationship between the registrant and the police is entirely
new to our polity and uniquely burdensome, altogether aside
from the burdens of notification. Requiring an American citizen
to register with the police because of a single victimless of-
fense, without clear and convincing proof of danger to anyone,
is a long step away from our traditions of freedom under law.

The burden of registration also casts a continuing shadow of
further criminal sanctions and possible reincarceration, not for
the sex offense for which a registrant was first convicted, but
for failing to comply with affirmative duties of annually appear-
ing in person before local police officials and maintaining the
accuracy of registration information. See G. L. c. 6, § 178F-
§ 178H. Sanctions of imprisonment for years for failure to
comply with continuing affirmative registration duties, once a
person is placed on the sex offender registry, undermine the
distinction that the court attempts to draw between the
registrant's burden and the burden on the liberty interest of one
facing civil commitment or the administration of antipsychotic
medication, *ante* at 101, citing *Guardianship of Roe*, 383 Mass.
415, 423 (1981), and *Superintendent of Worcester State Hosp.* v.
*Hagberg*, 374 Mass. 271, 275-277 (1978). The burden in those
civil proceedings is proof beyond a reasonable doubt, *ante* at
101, a standard plainly higher than clear and convincing
evidence. *Petition of the Dep't of Social Servs. to Dispense with
Consent to Adoption*, 392 Mass. 696, 697-700 (1984) (declining
to adopt beyond reasonable doubt standard of proof in proceed-
ing to terminate parental rights, but affirming clear and convinc-
ing evidence standard). When "particularly important" interests
are involved in a civil proceeding, whether or not physical
restraint is threatened, the United States Supreme Court has
mandated a clear and convincing evidence standard of proof
and stated that, "[n]otwithstanding 'the state's "civil labels and
good intentions," ' . . . this level of certainty [is deemed]
necessary to preserve fundamental fairness in a variety of

government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.' " *Santosky* v. *Kramer*, 455 U.S. 745, 756 (1982) (requiring clear and convincing evidence standard to support termination of parental rights), quoting *Addington* v. *Texas*, 441 U.S. 418, 425, 426, 427 (1979) (civil commitment); *Woodby* v. *INS*, 385 U.S. 276, 285 (1966) (deportation); *Chaunt* v. *United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Schneiderman* v. *United States*, 320 U.S. 118, 125, 159 (1943) (denaturalization). A registrant's liberty interest is seriously infringed in the creation of a long-term relationship with the police, in the potential criminal sanctions overshadowing that relationship, and in the stigma of notification — all penalties that are "more substantial than mere loss of money." *Santosky*, *supra*, quoting *Addington* v. *Texas*, *supra* at 424.

The court also too easily confines the State's interest to a single dimension. While the primary purpose of the registration statute is to protect the public from sexual predators, the State also has "an interest in ensuring that its classification and notification system is both fair and accurate." *E.B.* v. *Verniero*, *supra* at 1107. The State has no interest in making erroneous classifications and implementing overbroad registration and notifications. *Id.* See *Doe* v. *Pataki*, *supra* at 470. Contrary to the court's conclusion, the burdens on the government are great, without any likely benefit, when it holds hearings for and maintains the registration of thousands of registrants for whom there is no clear evidence that they pose any danger to the public. Requiring the government to assemble and present clear evidence of a sex offender's dangerousness would ensure that limited adjudicatory and police enforcement resources would be concentrated on those individuals who realistically may pose threats to young children and other vulnerable populations. As observed in an altogether different context, but oddly apropos of this classification system as well, "when everything is classified, then nothing is classified, and the system becomes one to be disregarded by the cynical or the careless." *New York Times Co.* v. *United States*, 403 U.S. 713, 729 (1971) (Stewart, J., concurring).

The interests of the individual and the State coincide in requiring a standard of clear and convincing evidence. I respectfully dissent from the court's ruling on the standard of proof in classification hearings.