Gants, J.
The plaintiff, who this Court has allowed to proceed with a pseudonym,[1] has brought this complaint seeking judicial review of the Sex Offender Registry Board’s (“the Board”) classification of the plaintiff as a Level 3 sex offender. He moves now for a preliminary injunction ordering a stay of the plaintiffs registration and enjoining any further dissemination of information regarding the plaintiff. After hearing, for the reasons stated below, the plaintiffs motion for a preliminary injunction is DENIED.
DISCUSSION
Standard of Review
The statutory provision governing judicial review of the Board’s final classification specifically declares that such review shall be in accordance with G.L.c. 30A, §14. G.L.c. 6, §178M. Under G.L.c. 30A, §14, this Court may only reverse or modify the Board’s decision “if it determines that the substantial rights of any party may have been prejudiced because the agency decision is unsupported by substantial evidence; or arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” G.L.c. 30A, §14(7). When reviewing an agency’s decision, “the court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id.
Preliminary Injunction Standard
In determining whether to grant a preliminary injunction, this Court must perform the three-part balancing test articulated in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). First, the court must evaluate the moving party’s claim of injury and its likelihood of success on the merits. Id. at 617. Second, it must determine whether failing to issue a preliminary injunction would subject the moving party to irreparable injury — losses that cannot be repaired or adequately compensated upon final judgment. Id. at 617 & n. 11. Third, “(i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. In balancing these factors, “[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. In an appropriate case, like this, “the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983).
Framing the Issue
Under G.L.c. 6, §178K, the Board is obliged to “promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public or for relief from the obligation to register and shall provide for three levels of notification depending on such risk of reoffense and the degree of dangerousness posed to the public.” G.L.c. 6, §178K(1). The Board must also “apply the guidelines to assess the risk level of particular offenders.” Id. Without limiting the factors that the Board may deem relevant in determining the risk of reoffense, the statute sets forth specific factors that the Legislature declared to be relevant, including, inter alia, (a)(ii) “whether the sex offender’s conduct is characterized by repetitive and compulsive behavior; (iii) whether the sex offender was an adult who committed a sex offense on a child; . . . (b)(i) the relationship between the sex offender and the victim; . . . (b)(iii) the number, date and nature of prior offenses; . . . [and] (g) the sex offender’s history of alcohol or substance abuse . . .” Id.
The Board, in accordance with this statutory mandate, has promulgated regulations that set forth 24 factors that the Board shall consider in determining the appropriate level of classification for a sex offender. 803 CMR §§1.39 & 1.40. With regard to each factor, the Board articulates which elements make the sex offender more likely to reoffend and which make him less likely to reoffend, often citing the pertinent psychological and empirical literature. 803 CMR §1.40. The regulations, however, do not provide any guidance as to how these various factors are to be weighed when some factors point to a greater likelihood of reoffending while others point to a lower likelihood of reoffending, i.e. which factors are critically important and which are less important in determining the probability of recidivism. The weighing of the importance of these many factors is apparently left to the Board and, when *652 the Board’s decision is challenged, to the Hearing Examiner. See id.
“Where the Board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level 3 designation to the sex offender.” G.L.c. 6, §178K(2)(c). If the Board gives a level 3 classification to a sex offender, the police department where the sex offender resides must notify organizations and individuals that are likely to encounter the sex offender, and must also “actively disseminate” information regarding the sex offender. Id.
In the case at bar, the Hearing Examiner carefully identified and evaluated each of the 24 factors that applied to the plaintiff, both those that increased his risk of recidivism and those that diminished that risk. While this Court does not yet have the benefit of the record, there is no reason to believe that the Hearing Examiner did not accurately apply the facts he found to the various factors. The crux of this case is whether the Hearing Examiner reasonably could have concluded that the factors that increase the risk of recidivism outweighed in importance those that reduce the risk of recidivism without the benefit of expert evidence. Phrased in the appropriate legal language, this Court must determine whether:
the plaintiff is likely to prevail in showing that
the Hearing Examiner’s finding that the plaintiffs risk of reoffense is high and his degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination
is not supported by substantial evidence, or is arbitrary or capricious, or otherwise not in accordance with law
when that finding is not made with the benefit of expert evidence.
Analysis of the Issue
Curiously, there appears to be no appellate decision that directly answers the question of whether such a finding must be supported by expert evidence. In A.B. Doe v. Sex Offender Registry Board, Appeals Court Justice Janis Berry, as a Single Justice, declared that expert testimony was not needed for such a finding when the Board had the benefit of expert evidence that was offered in a prior proceeding civilly to commit the sex offender as a sexually dangerous person (“SDP proceeding”). Order, Appeals Court No. 02-J-7 (February 1, 2002) at 12. This Court is not aware of any Massachusetts appellate case that directly addresses whether, as here, a Level 3 classification can be made without either expert testimony or expert evidence.
The plaintiff understandably points by analogy to SDP proceedings, where the Supreme Judicial Court has declared that expert testimony is necessary before a judge can find probable cause to believe that a person is a sexually dangerous person, that is, that he currently “suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses.” Commonwealth v. Bruno, 432 Mass. 489, 511 (2000); G.L.c. 123A, §1.The Court explained, “Whether a person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony.” Commonwealth v. Bruno, 432 Mass. at 511. Applying this reasoning, the plaintiff argues that the question of whether his risk of reoffense is high is a “predictive behavioral question” that is equally beyond the range of ordinaiy experience and requires expert testimony or, at least, expert evidence.
There is, however, a significant difference between SDP proceedings that may lead to indefinite civil commitment versus classification proceedings that may lead to public dissemination of information regarding the sex offender. In SDP proceedings, civil commitment is premised on a finding that the sex offender suffers from a mental abnormality or personality defect, and that this mental abnormality or personality defect results in such a serious difficulty in controlling his behavior as to make him likely to engage in sexual offenses. G.L.c. 123A, §1; Kansas v. Crane, 534 U.S. 407, 413 (2002). The constitutional requirement that the government prove that the sex offender has “serious difficulty in controlling his behavior” is intended to distinguish a dangerous sexual offender whose mental abnormality or personality disorder subjects him to civil commitment from the dangerous, but typical, recidivist convicted in an ordinary criminal case. Kansas v. Crane, 534 U.S. at 413. To civilly commit a person in an SDP proceeding, it is not enough for the Commonwealth to prove that the sex offender is likely to commit new sex offenses if released; the Commonwealth must prove that the sex offender has a mental abnormality or personality defect that makes him likely to commit these offenses. Since civil commitment is premised on this psychological model, it is natural for the Supreme Judicial Court to require expert psychiatric or psychological testimony for any finding, even a probable cause finding, that a person suffers from one or more of these psychological conditions and, as a result, is likely sexually to reoffend.
A level 3 classification of a sex offender, however, is not premised on a psychological model. Of the 24 factors that the Board must use in reaching a final classification decision, only Factors 1 (mental abnormality) and 15 (psychological or psychiatric profiles indicating risk to reoffend) require psychological or psychiatric findings. 803 CMR §1.40. There is nothing in either G.L.c. 6, §178K or the regulations promulgated by the Board that require that Factors 1 or 15 apply to a sex offender for him to receive a level 3 *653 classification. Indeed, the Hearing Examiner here found that the plaintiff should receive a level 3 classification without finding any mental abnormality or using any psychological or psychiatric profile. Without these two factors, the level 3 classification is divorced entirely from the psychological model of the SDP proceeding and becomes purely a predictor of sexual recidivism. The Board or Hearing Examiner is not concluding that the sex offender is likely to reoffend because he has a mental abnormality or personality disorder; it is simply declaring that he is likely to reoffend based on other predictive factors.
When, as here, the Hearing Examiner made no findings regarding Factors 1 and 15 and based his prediction of high risk on other factors, the Hearing Examiner’s evaluation of the risk of sexual recidivism is less analogous to a SDP proceeding and more analogous to a parole proceeding. Under G.L.c. 127, §130, a prisoner “shall be granted parole . . . only if the parole board is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society.” G.L.c. 127, §130. There is no requirement that the parole board have the benefit of expert evidence before it proffers ah opinion as to the prisoner’s risk of recidivism even though its opinion will determine whether a prisoner remains in custody or goes free. See Stewart v. Chairman of the Massachusetts Parole Bd., 35 Mass.App.Ct. 843, 848 (1994) (“parole board has broad discretion in determining when to grant parole and is not limited, in making its predictive judgment about the inmate, as to the number and kind of witnesses from whom it will hear evidence”).
Nor does this Court think the plaintiff is likely to prevail in showing that a finding by a Board or Hearing Examiner regarding a sex offender’s risk of sexual recidivism cannot be based on substantial evidence or must be arbitrary or capricious when it is not supported by expert evidence. At the adjudicatory hearing, the Hearing Officer must make “particularized, specific, and detailed findings, guided by the factors set forth in § 178K, to demonstrate that close attention has been given to the evidence as to each offender and that the classification for each is appropriate." Doe v. Sex Offender Registry Bd., 428 Mass. 90, 102 (1998). The Board’s regulations that discuss whether each factor is positively or negatively correlated with sexual recidivism were devised after review of the available literature and even cite to some of that literature. See 803 CMR §1.40. Essentially, the Board and its staff reviewed the expert literature regarding the 24 factors and attempted to incorporate the results of that review in its regulations. Therefore, to a degree, the Board and the Hearing Examiners reap the benefit of expert evidence when they apply the regulations’ characterization of a factor as positively or negatively correlated with sexual recidivism. To be sure, the guidance provided by the regulations provides little help to the Board or a Hearing Examiner in ultimately determining the magnitude of a sex offender’s risk of sexual recidivism when the sex offender has certáin factors that are positively correlated with sexual recidivism and others that are negatively correlated. But this Court doubts that the absence of any regulatory guidance in weighing these factors, however serious the omission, will be enough to cause the adjudicating Court to conclude that the Hearing Examiner’s weighing of these factors is not based on substantial evidence or is arbitrary or capricious. For years, the Parole Board has been permitted to base its opinions of recidivism on far less guidance than the Sex Offender Registry Board has given its factfinders.
Although not dispositive of this issue, candor requires this Court to consider the pragmatic consequence of requiring expert testimony or expert evidence in every classification determination under G.L.c. 6, §178K. If expert testimony were required, the expert would need to review the same information about the sex offender that is furnished to the Board or Hearing Examiner, prepare a report, and testify at the classification hearing. If the Commonwealth were to offer expert testimony, the sex offender would have the right to offer expert testimony to rebut the opinion of the Commonwealth’s expert and, if the sex offender were indigent, as he often is, the rebutting expert’s fees would be paid by the Commonwealth. G.L.c. 6, §178KL(l)(a) (indigent offender “may also apply for and the board may grant payment of fees for an expert witness in any case where the board in its classification proceeding intended to rely on the testimony or report of an expert witness prepared specifically for the purposes of the classification hearing”). Realistically, from this Court’s experience in SDP proceedings, the fees for each expert would cost roughly between $3,000 and $5,000, for a total cost in expert fees alone of between $6,000 and $10,000 for each classification hearing. A court should think long and hard before it burdens a hearing with this magnitude of expense and thereby jeopardizes the economic feasibility of administering the Massachusetts Sex Offender Registry Law, especially when the consequence of the hearing is the dissemination of information about the sex offender rather than the civil commitment of the sex offender.
For these reasons, this Court believes it unlikely that the adjudicating Court will require the Board to have the benefit of expert evidence before it makes a finding as to the risk of sexual recidivism where, as here, that finding does not rely on Factor 1 or 15 or any other finding of mental abnormality or personality disorder.
Nor, on the facts of this particular case, does this Court believe it likely that the adjudicating Court will conclude that the Hearing Examiner’s findings as to this particular plaintiff are arbitrary or capricious or *654 are unsupported by substantial evidence.' The plaintiff was convicted in May' 1995 of vaginally raping the ten-year-old daughter and the twelve-year-old niece of his girlfriend on separate occasions in July 1991. Both girls also reported that the plaintiff had committed or attempted other indecent assaults upon them in this time frame. He received a 4-8 year state prison sentence on one count of rape, and a 5-7 year suspended sentence, with three years on and after probation, on a count charging indecent assault and batteiy on a child under 14. He completed his prison term on June 30,2001, and is presently on probation. The two rapes were committed when the defendant was earlier on probation on narcotics charges. Although he admitted in prison to having previously been a heroin addict, he has received no drug treatment. He has also never received any sex offender treatment.[2] Since his release from prison, he has lived with his wife (a different woman from the girlfriend whose daughter and niece he raped), her two daughters (ages 16 and 14), and her granddaughter. In view of the entirety of these circumstances, examined with the factors set forth in the regulations, this Court doubts that the adjudicating Court will find that the Hearing Examiner’s level 3 classification of the plaintiff was arbitrary or capricious or lacked substantial evidence.
Therefore, this Court finds that, in view of the deferential standard of review provided under G.L.c. 30A, the plaintiff is not likely to succeed on the merits. This Court further finds that, in view of the unlikelihood of success on the merits, the balance between the irreparable injury to be suffered by the plaintiff from the failure to issue a preliminary injunction is less than the irreparable injury that would be suffered by the public from the granting of the preliminary injunction. This Court notes that the plaintiff did not seek a temporary restraining order in this case and that, as a result, dissemination (or steps leading to dissemination) has already begun regarding the plaintiff.
ORDER
For the reasons stated above, this Court hereby ORDERS that the plaintiffs motion for a preliminary injunction is DENIED.

G.L.c. 6, §178M requires the Court to keep proceedings involving the judicial review of sex offender classifications confidential.

His conditions of probation do not require either sex offender treatment or drug treatment.