Curran, Dennis J., J.
This case is before me under G.L.c. 6, §178M and G.L.c. 30A, §14 for review of a hearing examiner’s decision that plaintiff should be classified as a Level 3 sex offender.
The facts of the underlying sex crime[1] are as follows.
On the morning of August 16, 2009, the victim, a 37-year-old woman, kisses her husband goodbye and leaves for an early morning run on a jogging/rail trail in Ayer, Massachusetts. While on that run, a man approaches her on a bicycle from the opposite direction and passes her, knocking her to the ground. The woman screams, struggles with her attacker, and tries to pull away. Instead, the perpetrator assaults her again, grabs and throws her to the ground. He hits her repeatedly while she screams that he stop. She fights and claws, struggling to get free, but the assailant grabs her again from behind, and drags her to the side of the trail. He then throws her to the ground and kneels on top of her, pinning her down completely. He moves his face next to the woman’s. Her screams for help are heeded by neighbors who call the police. The attacker gets off of the woman, retreats for his bike and escapes from the scene. He sees a neighbor calling the police, turns his bicycle around and flees in another direction.
The victim provides a detailed description of the assailant to the police, who immediately broadcast it and apprehend the assailant. He is identified. A police search of his backpack reveals the following:
a pair of little girl’s underpants:
condoms: and
a digital camera.
Mr. “Doe” pleaded guilty to assault with intent to rape, three counts of assault and battery and kidnapping. He was sentenced to a five-and-a-half- to six-year state prison sentence, with concurrent eight-year probation terms to commence from and after imprisonment.
The Massachusetts Sex -Offender Registry Board classified Mr. “Doe” as a Level 3 Sex Offender, a finding he appealed to a SORB hearing examiner who conducted a de novo hearing. Mr. Doe was afforded counsel and had a full opportunity to challenge the Board’s evidence and present his own version of events by testimony and documentation.
That hearing revealed the following.
Among the statutory factors that the hearing examiner found were that the crime occurred in a “public place,” underscoring the deviant’s lack of impulse control, his two prior adult incarcerations: one for arson and breaking and entering with intent to commit a felony, and another for breaking and entering in the nighttime with intent to commit a felony; his two parole failures, for example, after being sentenced to a ten-year commitment for arson and breaking and entering, he was released on parole the very next year, only to be re-arrested and convicted of yet another charge of breaking and entering in the nighttime.
He began participating in prison sex offender treatment, but was terminated because of poor attendance. Upon reinstatement, his social worker described his attitude as “indifferent,” that he had “boundary” issues, and was defensive when confronted with issues.
Finally, Mr. “Doe’s” treatment records revealed that he admitted to physically attacking the woman, but denied that there was any sexual aspect to his assault on her.
The hearing examiner found ten factors demonstrating Mr. Doe’s dangerousness and evidencing her conclusion that he posed a public threat as a Level 3 Sex Offender. She was able to discern only two mitigating factors. Her nineteen-page analysis need not be repeated here, but a copy is appended to this Memorandum.
Mr. Doe appealed SORB’s classification, and a hearing was held before this Court on Thursday, December 10, 2015.
The very next day, the Supreme Judicial Court dramatically changed the legal landscape for the state’s manner of processing and classifying sex offenders. In footnote 26 of that decision, the Court applied that decision to all cases then-pending in the Superior Court, among other fora.
The hearing examiner’s decision, rendered on December 14, 2014, applied the then-appropriate and lawful “preponderance of the evidence” standard. See Doe No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 91 (1998). The hearing examiner wrote: “I find that the Board has met its burden of proving by a prepon *138 derance of the evidence that the Petitioner [Mr. Doe] poses a high risk to reoffend and a high degree of dangerousness.” Decision on Petitioner’s Appeal of Recommended Classification at 19.
In its new decision, the Supreme Judicial Court overruled Doe No. 972 in light of substantial changes to the sex offender registration statute and held that the Sex Offender Registry Board “is constitutionally required to prove the appropriateness of an offender’s risk classification by clear and convincing evidence. SJC-11823, slip op. at 2 (Dec. 11, 2015).” Doe No. 380316 v. Sex Offender Registry Board.
Accordingly, despite overwhelming evidence of Mr. Doe’s dangerousness, the comparatively near-utter lack of mitigating circumstances, this court, in an exercise of caution dictated by the strong policy shift and significant legal change indulged in by this new Supreme Judicial Court decision, remands this case to the Sex Offender Registry Board for yet another classification hearing to determine whether Mr. “Doe’s” prior criminal convictions, present horrendous sexual crime, indifference as to treatment and utter failure at parole, among other factors, meets the entirely new legal standard to be applied here of “clear and convincing evidence.”
ORDER
For the reasons articulated above, this court is mandated to now follow the 33-page Supreme Judicial Court decision setting forth—for the first time in 17 years—a new legal standard. SORB is also hereby ordered to “cease disseminating [Doe #321579’s] registry information on the internet unless and until he is finally classified under the clear and convincing standard.” Doe #380316 at 32. Thus, this case is remanded to the Sex Offender Registry Board for an entirely new evidentiary hearing consistent with the revisionist sex offender classification requirements dictated by the Court in Doe #380316.

 Despite the common and casual practice (legislative and judicial) of describing a SORB criminal act as an “offense,” such minimization by choice of language is an injustice to both the public and the crime victim. An “offense,” according to most dictionaries, is defined as a:
1.) violation or breaking of a social or moral rule; a transgression; sin;
2.) a transgression of the law; misdemeanor;
3.) the cause of transgression or a wrong;
4.) something that offends or displeases; or
5.) the act of offending or displeasing. See www. dictionary, com.
Webster's Third International Dictionary lists the following synonyms for “offense”: “resentment, umbrage, pique, dudgeon [and] huff." Its definitions include “something that outrages the moral or physical senses,” “the act of displeasing, affronting or angering,” a “breach of social or moral conduct,” or “an infraction of the law: crime; misdemeanor.”
Here, attacking a woman from behind, pinning her down, repeatedly striking her so that she would stop screaming and straddling her face with obvious further malevolent intentions are not “transgressions,” they are not misdemeanors and they are not “wrongs”; nor do they hardly constitute something that simply “offends” or “displeases.” They should be called for what they are: crimes. Even more appropriately, they are the depraved acts of a sexual predator. Anything less is at the least, disingenuous and, worse, perverts the English language.